401-22/WJP/YA
**FREEHILL HOGAN & MAHAR LLP**
*Attorneys for Petitioner*
80 Pine Street, 25th Floor
New York, New York 10005-1759
(T): 212.425.1900 | (F): 212.425.1901
William J. Pallas
Yaakov U. Adler

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASIA MARITIME PACIFIC CHARTERING LTD., <br><br> Plaintiff, <br><br> -against- <br><br> COMERCIALIZADORA COLUMBIA S.A DE C.V., <br><br> Defendants. | Civil Action No.: 22-cv-__10789__ <br><br> **VERIFIED PETITION TO COMPEL ARBITRATION** |

Petitioner, ASIA MARITIME PACIFIC CHARTERING LTD. ("AMP" or "Petitioner"), by its attorneys, Freehill Hogan & Mahar LLP, as and for its Verified Petition against Respondent, COMERCIALIZADORA COLUMBIA S.A. DE C.V. ("Columbia" or "Respondent"), alleges upon information and belief as follows:

**PETITION TO COMPEL**

1. This Petition to Compel Arbitration is made pursuant to Sections 2, 4, 5 and 6 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1 *et. seq*.

2. Jurisdiction is proper in this Court pursuant to Section 4 of the FAA. 9 U.S.C. § 4.

582654.1

3. This is also a claim within the Court's admiralty and maritime jurisdiction under 28 USC § 1333 in that it involves the breach of a charter party contract and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4. At all times material hereto, Petitioner AMP was a Hong Kong corporation with its principal place of business located in Hong Kong, and was the disponent owner of the vessel M/V AMALEA (the "Vessel").

5. At all material times, Respondent Columbia was and still is a foreign entity with an office and place of business at Gómez Farías 200 Co. Del Carmen Coyoacán, CDMX 04100, and was the charterer of the Vessel.

6. On or about March 11, 2022, Petitioner, as Owner, and Respondent, as Charterer, entered into a Voyage Charter Party in which Respondent agreed to charter the Vessel from Petitioner for the carriage of a cargo of white corn in bulk from Topolobampo, Mexico to Puerto Quetzal, Guatemala. (A copy of the written "fixture recap" setting forth the applicable terms for the subject Voyage Charter, with the incorporated Gencon pro forma charter party, is attached hereto as Exhibit 1.)

7. The voyage was performed and subsequent to the completion of the discharge of the cargo, Petitioner calculated the demurrage due and submitted this calculation to Respondent on or about May 12, 2022. Respondent's broker (Oceanslink USA Corp), responded, advising that Respondent had noticed that the demurrage rate used for the calculation was wrong, as the agreed demurrage rate was USD $23,500 instead of USD $28,000. Respondent requested that the demurrage calculation be revised accordingly. Petitioner obliged, and on June 3, 2022, Oceanslink responded that Respondent had confirmed the calculation was "in good order" (*i.e.*, the demurrage was correctly

calculated and the amount owed was undisputed) and requested an invoice be provided. That same day, Petitioner provided its final freight invoice, reflecting a balance due to the Petitioner of USD $444,198.88. (A copy of the email chain reflecting the above facts and attaching Petitioner's final freight invoice is annexed hereto as Exhibit 2.)

8. Payment on the undisputed invoice was due on June 10, 2022. (*See* Ex. 2.)

9. Respondent failed to make payment on the invoice by the June 10 due date.

10. On July 14, 2022, Petitioner followed up with Respondent concerning the unpaid invoice and urgently requested payment details. (A copy of the email from Petitioner to Respondent dated July 14, 2022 is annexed hereto as Exhibit 3.)

11. Petitioner followed up with Respondent in August 2022 inquiring as to the status of payment, and a meeting was held with Respondent by zoom on August 17, 2022 to discuss Respondent's non-payment. Respondent advised in the meeting that they were attempting to obtain a line of credit with which to pay the invoice, and they advised (via Oceanslink) on September 7 that they were expecting the credit line to be approved on September 9 and that they would "provide payment schedule beginning next week." Later that day, Respondent advised that the line of credit would not be approved until September 19. Petitioner pushed back against any further delays, and Respondent thereafter advised that they would be willing to make a "good will" payment in the amount of USD $32,667.48 toward the unpaid demurrage.[1] Petitioner responded that they appreciated

---

[1] The offer was made in response to follow-up from Petitioner as to the status of payment on the collective debt owed by Respondent in respect to two voyage charters, one involving the Vessel which is the subject of this Action, and one involving the MV CS SATIRA, which is the subject of a related action being filed contemporaneously herewith in the Southern District of New York.

3

582654.1

the gesture and "hope the balance will be settled as soon as possible." (A copy of the email chain reflecting the above facts is annexed hereto as Exhibit 4.)

12. Respondent never made any "good will" payment to Petitioner, as they had proposed.

13. Petitioner reached out to Respondent repeatedly in September and October, seeking payment and a resolution of the undisputed amounts owed, but to date no amounts due under the Final Freight Invoice have been paid, and the entire balance of USD $444,198.88 remains due and owing.

14. The subject contract is based on the Gencon charter party form which provides for arbitration in New York as follows:

> **Clause 25.- ABITRATION [SIC]**
> Should any dispute arise between owners and charterers, both parties to work amicably in order to try to solve the problem, if no solution can be agreed then the matter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties here to and the third by the two so chosen. Their decision or that of any two of them shall be final and for purpose of enforcing any award, this agreement may be a rule of the court. The arbitrators shall be commercial men conversant with shipping matters and not lawyers, barristers or attorneys or member of the legal profession, American law shall rule.
> For disputes where the total amount claimed by either party does not exceed Us. $50,000 the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc

(Ex. 1, at p. 7 of 12.)

15. On November 11, 2022, Petitioner demanded arbitration, appointed its arbitrator (Mr. Daniel M. Gianfalla), and demanded that Respondent appoint its arbitrator. (A copy of Petitioner's Demand for Arbitration is annexed hereto as Exhibit 6.)

16. Respondent did not respond or appoint an arbitrator.

17. On November 29, 2022, Petitioner followed up with Respondent, requesting a response and counter-appointment of an arbitrator no later than 6:00 PM on December 2, 2022. (A copy of this email communication is annexed hereto as Exhibit 7.)

18. This email message was confirmed delivered to Respondent, and it was read by two of the recipients (Joaquin Peralta Luna and Jose Luis Sandoval Luna). (A copy of the delivery confirmation and read receipts from Peralta Luna and Sandoval Luna are annexed hereto as Exhibit 8.)

19. In the November 29 correspondence, Petitioner cautioned Respondent that its continued recalcitrance would result in Petitioner filing this action in the Southern District of New York in which it would seek recovery of the fees and costs incurred in having to undertake this unnecessary procedural step.

20. Neither the Demand for Arbitration nor the follow-up message on November 29 prompted Respondent to comply with its obligations under the arbitration clause to appoint an arbitrator and arbitrate.

21. The validity and legality of the charter party contract, including the agreement to submit all disputes arising under the charter party to arbitration in New York, is not an issue and has never been questioned.

22. Respondent is in breach of the charter party contract for failing to pay to Petitioner the outstanding undisputed sums due for demurrage as outlined above, and in failing to timely appoint an arbitrator under the arbitration provision of the charter resulting in damages, as nearly as can be determined at the present time, of $444,198.88, plus attorneys' fees and costs, no part of which has been paid despite due demand.

23. Petitioner has duly performed all its obligations to Respondent in accordance with the terms of the charter party.

24. Petitioner expressly reserves all its rights under the Charter, including but not limited to the right to claim for any additional damages that Petitioner may suffer as a result of Respondent's continued breaches and nothing herein constitutes a waiver of any of Petitioner's rights thereunder.

25. No previous application has been made to this Court or to any other Court or Judge for the order and relief sought herein.

26. Petitioner has incurred costs and attorneys' fees related to this application which Petitioner was compelled to make due to Respondent's delay in appointing an arbitrator and proceeding to arbitration.

## REQUEST TO AUTHORIZE ALTERNATIVE SERVICE

27. In addition to the foregoing, Petitioner respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 4(f)(3), authorize Petitioner to serve Respondent with a copy of the Petition to Compel and all other related documents by email.

28. Federal Rule of Civil Procedure 4(f)(3) empowers the Court to order an alternative means of service on an entity in a foreign country if the ordered means of service "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *FTC v. Pecon Software Ltd.*, 12 Civ. 7186 (PAE), 2013 U.S. Dist. LEXIS 111375, at *8-9 (S.D.N.Y. Aug. 7, 2013). There is no hierarchy among the means of service upon foreign individuals provided for in Rule 4. *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). To that extent, courts have consistently described an order authorizing alternative means of

service pursuant to Rule 4(f)(3) as "neither a last resort nor extraordinary relief." *Pecon Software Ltd.*, 2013 U.S. Dist. LEXIS 111375, at *9. The decision whether to authorize alternative service is committed to the sound discretion of the Court. *Id*.

29. While some courts have conditioned an order of alternative service under Rule 4(f)(3) upon a showing that the party first attempted service through the other methods prescribed in Rule 4(f), this is not a requirement under the text of Rule 4(f). *Id*. Furthermore, "[c]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)" in the first instance. *See In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (collecting cases and noting courts have granted leave to effect service by alternate means where service under the Hague convention would take as few as three months).

30. Here, Petitioner respectfully submits that an order authorizing service by email is warranted. First, this is not a method that is prohibited by international agreement, thus satisfying the first condition for an order authorizing alternative service under Rule 4(f)(3). Both the United States and Mexico are signatories to the Hague Convention. Mexico has objected to service under Article 10 of the Hague Convention, which addresses, among other things, service by postal channels. However, service via email is appropriate even when a country "object[s] to service through 'postal channels'" *Pecon Software Ltd.*, 2013 U.S. Dist. LEXIS 111375, at *13 (collecting cases authorizing email service); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011). Accordingly, service via email would not be prohibited by international agreement in this case.

31. Next, an alternative means of service satisfies constitutional due process standards when the "notice [is] reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton Cnty., New York*, 466 F.3d 259, 269 (2d Cir. 2006). Service by email will satisfy all constitutional due process standards if the party requesting an order for service by email "demonstrates that the email is likely to reach the defendant." *Pecon Software Ltd.*, 2013 U.S. Dist. LEXIS 111372, at *14. Here, as indicated above, Respondents have an active email account, which is being monitored, and they have received Petitioner's Demand for Arbitration and follow-up, as confirmed by read receipts. *See* Para. 18, *supra*. Notice of this Petition via email, therefore, would be reasonable calculated under the circumstances to apprise Respondent of the pendency of the action and afford them an opportunity to respond.

32. This is a case where authorization of alternative service is warranted despite the fact that Petitioner has not yet attempted service on Respondent in Mexico via the Hague Convention. Absent service by email in this case, there would be inordinate delays in effecting service of process. As has been recognized by federal district courts, service under the Hague Convention in Mexico can take months, and is often accompanied by mid-stream, unexplained rule changes that can restart the months-long process of effecting service. *See Canal Indem. Co. v. Castillo*, Civil Action No. DR-09-CV-43-AM-CW, 2011 U.S. Dist. LEXIS 170342, at *4-5 (W.D. Tex. Mar. 30, 2011) ("In the present case, Plaintiff's utilization of the Central Authority has well exceeded six months, with no success. Without any clear substantiation, Mexico now requires a letter of request to effect service within its country under the Hague Convention. Once Plaintiff could ascertain this requirement, several months had passed. If a letter of request were now issued, the process may be successful but could possibly take many more months. The Court therefore finds that more delays justify proceeding under the provisions of Rule 4(f)(3), rather than 4(f)(1).").

582654.1

33. Additionally, state courts have recognized that service under the Hague Convention in Mexico can lead to inordinate delays. *See* https://www.utcourts.gov/en/legal-help/legal-help/procedures/service/mexico.html (Utah state courts website noting that "service under the Hague Convention to Mexico can take as long as eight months") (last visited December 21, 2022).

34. Further, international process servers publicly note that there are lengthy delays to service of process in Mexico pursuant to the Hague Convention, with the interjection of novel, unexplained requirements that can set the process back from a timing perspective. *See* https://www.dgrlegal.com/international-process-service-mexico/#:~:text=The%20process%20for%20service%20under,sent%20back%20to%20your%20office. ("Despite being right across the border, Mexico has one of the longest timelines under the Hague Service Convention and there are consistent delays during service. They are especially strict with their requirements and oftentimes may reject documents for new, previously unknown reasons.") (last visited December 21, 2022); https://www.haguelawblog.com/2017/02/serve-process-mexico/ (noting that "actually making [service of process] happen [under the Hague Convention in Mexico] is anything but smooth. The real problem with service in Mexico is that it takes an interminably long time, and in many cases, local authorities are decidedly less than motivated to act against large local entities, so service on the local factory boss may not happen at all.") (last visited December 21, 2022). In light of the foregoing, Petitioner respectfully submit that authorizing service by email is a sensible approach to avoiding lengthy delays and ensuring that this matter does not linger on the Court's docket indefinitely.

35. Finally, service of process by alternative means (in this case, email) is warranted here, where Respondent is clearly ignoring the Demand for Arbitration, of which there is confirmation that

they received notice. Under these circumstances, it is likely that they would continue to ignore or evade service of process under the Hague Convention, if that is a route the Court requires Petitioner to take. Authorizing alternative service in this case would circumvent any further delays in the resolution by arbitration of this fairly straightforward (and undisputed) debt.

WHEREFORE, Petitioner prays:

1. That process in due form of law according to the practice of this Court may issue against Respondent;

2. That this Court authorize alternative service via email pursuant to Federal Rule of Civil Procedure 4(f)(3) upon Respondent;

3. That in accordance with Sections 4 and 5 of the Federal Arbitration Act, this Court enter an Order directing that the Respondent appoint an arbitrator within five (5) days after service by email upon the Respondent or its attorneys of a copy of the Order entered herein;

4. That in the event the Respondent fails to appoint an arbitrator within the aforesaid five (5) days, that this Court enter an Order: (i) appointing an arbitrator on behalf of Respondent or (ii) authorizing Petitioner to appoint an arbitrator on behalf of Respondent with that appointment having the same force and effect as if the appointment had been made by Respondent;

5. That this Court retain jurisdiction over this matter until a final award is entered herein under the terms of the subject charter party and pursuant to the provisions of 9 U.S.C. Section 1 *et seq.*;

6. That a decree be entered in favor of the Petitioner against the Respondent for the full amount of the Petitioner's damages, together with interest, costs, and attorneys' fees should Respondent fail to timely appear; and

7. That Petitioner be awarded the costs and fees of this Petition, including costs, disbursements and attorneys' fees and such other and further relief as the Court deems just and proper regardless of when Respondent appears.

Dated: New York, New York
December 21, 2022

FREEHILL HOGAN & MAHAR LLP
*Attorneys for Petitioners*

582654.1

By: /s/ *William J. Pallas*

---

William J. Pallas
Yaakov U. Adler
80 Pine Street, 25th Floor
New York, New York 10005-1759
(T): 212.425.1900 | (F): 212.425.1901
pallas@freehill.com
adler@freehill.com


TO:    Comercializadora Columbia S.A de C.V.
           Gómez Farías 200
           Co. Del Carmen
           Coyoacán
           CDMX 04100
Attn:   Sandoval.jl@columbia.com.mx
           jperalta@columbia.com.mx
           jvalle@columbia.com.mx

## ATTORNEY VERIFICATION

State of New York  )
                   ) ss.:
County of New York )

      William J. Pallas, an attorney at law, duly admitted to practice in the Courts of the State of New York and before this Court, affirms under penalty of perjury as follows:

      1.    I am the attorney for the Petitioner in this matter and have read the foregoing Verified Petition to Compel Arbitration, know the contents thereof and upon information and belief, the matters alleged therein are true.

      3.    The source of my information and the grounds for my belief are communications, papers and reports contained in my file and provided to me by our client.

By: /s/ *William J. Pallas*

_____
William J. Pallas

Sworn to before me this
21st day of December 2022

_____
NOTARY PUBLIC

Yaakov U. Adler
Notary Public, State of New York
No. 02AD6349134
Commission Expires October 11, 2024